IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GARY WILLERT, LISA WILLERT,
LASERMASTERS, LLC, and GPS HOLDINGS, LLC,

                        Plaintiffs,                      OPINION and ORDER

    v.

                                                        17-cv-496-jdp

BRUCE ANDRE and LIBERTY PARTS TEAM, INC.,

                        Defendants.

---

This case involves a complex business dispute that the court resolved on summary judgment in defendants' favor. Dkt. 137. All that remains are two motions for sanctions and a bill of costs, all filed by defendant Liberty Parts Team, Inc.

## A. Bill of costs

Liberty's bill of costs, Dkt. 141, seeks $14,872.77, a modest amount in view of the stakes of this litigation and the amount of discovery conducted. Plaintiffs' objection, Dkt. 184, is groundless. Their main argument is that I should deny the costs of transcripts because Liberty did not inform the court of the per-page rate for the deposition transcripts. Liberty is correct that its bill of costs complies to the letter with the requirements of 28 U.S.C. § 1924. Liberty submitted documentation of its costs and attested that they were necessarily incurred in defense of the case. The individual amounts are eminently reasonable, as is the total request. The clerk of court is instructed to tax costs in favor of Liberty in the amount requested in Dkt. 141.

## B. First motion for sanctions

Liberty's first motion for sanctions, Dkt. 135, relies on 28 U.S.C. § 1927. According to Liberty, plaintiffs' counsel knew that they did not have evidence to support their claims for

misappropriation of trade secrets and for breach of contract and yet failed to abandon them, forcing Liberty to incur unnecessary litigation expenses. I am not persuaded.

As for the trade secret claim, Liberty contends that plaintiffs should have withdrawn the claim immediately after the March 12, 2018 deposition of Gregory Kastenmeier (a former GPS employee who went to work for Liberty) who denied all of plaintiffs' allegations related to their trade secret claim. But Liberty tells only part of the story: in an earlier deposition, Kastenmeier admitted that he had taken and disclosed the information alleged to be a trade secret. Dkt. 60 (76:8–77:2; 78:8–19). Plaintiffs' trade secret claim was never a strong one, but it was not definitively foreclosed by Kastenmeier's March 12 deposition. So I will not impose a sanction for plaintiffs' pressing on with the trade secret claim despite Kastenmeier's denials.

As for the breach of contract claim, Liberty contends that it was foreclosed by a June 15, 2017 email from Liberty to plaintiff LaserMasters, followed by Liberty's payment of the amount owed by means of a check that LaserMasters cashed on July 11, 2017. Ultimately plaintiffs conceded that the so-called "swap" payment in 2017 resolved the contract dispute, but not before Liberty spent 10 months defending the claim.

Plaintiffs contend that the breach of contract issue was not resolved until a Liberty employee sent an email to LaserMasters on March 20, 2018, explaining that the swap payment had been completed in July 2017. And even then, LaserMaster's management (and by extension, its lawyers) did not know about the Liberty email. So, plaintiffs argue, they didn't *know* that the matter had been resolved until Liberty adduced its March 20, 2018 email in support of its motion for summary judgment. Until then, plaintiffs pressed their breach of contract claim on the basis that Liberty's debt was still on the LaserMaster books.

I agree with Liberty that plaintiffs should have abandoned the breach of contract claim before Liberty moved for summary judgment. I reject plaintiffs' attempt to put the blame on Liberty for failing to "disclose" the March 20, 2018 email until April 6, 2018. The March 20 email was a *response* to a March 14 email from a LaserMasters employee proposing a swap payment to address the outstanding balance. The bottom line is that LaserMasters could have discovered the swap payment if it had looked more carefully at its own books. But section 1927 sanctions are available only against an attorney, and there is no evidence that plaintiffs' *counsel* knew before Liberty moved for summary judgment that the swap payment had been completed and that the breach of contract claim was baseless. So the court will deny this motion for sanctions in full.

C. **Second motion for sanctions**

Liberty's second motion, Dkt. 151, seeks sanctions under Federal Rule of Civil Procedure 37(c) for plaintiffs' failure to admit facts that Liberty later proved. Under Rule 37(c)(2), the court must order a party who failed to admit facts later proven to pay the requesting party's reasonable expenses, subject to several exceptions. The main question "is not whether a party prevailed at trial but whether he acted reasonably in believing that he might prevail." *United States v. Pecore*, 664 F.3d 1125, 1137 (7th Cir. 2011).

Plaintiffs responses to Liberty's requests for admission are not ideal, but I decline to impose sanctions. The form of Liberty's requests makes it hard to determine whether the proposition has been proven. Instead of asking plaintiffs to admit simple facts, Liberty's requests are phrased like negative contention interrogatories, asking plaintiffs to admit that they have no admissible evidence to support a contention in the complaint. There is no rule barring such requests for admission. But they are not all the helpful in narrowing the factual

disputes. It will be hard to show that all the facts underlying such a complex request for admission have been definitively proven, and it will be even harder to show that counsel was not acting reasonably in denying such a complex, compound fact.

Liberty has not made the required showing here because Liberty has not matched up each request for admission with a specific determination by the court that the pertinent fact is undisputed. For example, Liberty's Request 40 asked:

> Admit that you have no admissible evidence to support the allegation contained in paragraph 16 of the Second Amended Complaint that "Andre undertook a series of activities designed to move his former employees – and their expertise – to Liberty."

In the summary judgment opinion, in the context of analyzing plaintiffs' tortious interference claims, the court concluded that "there is no evidence that Reinke and Andre cooperated to induce Global Printer employees to move to Liberty." Dkt. 137 at 24. But that conclusion does not quite square up with Liberty's Request 40. Without matching up the purportedly objectionable request with a clear-cut conclusion by the court, I am not persuaded that the denied fact has really been proven. As for Request 40, which I cite only as an example of the pervasive problem, the court also acknowledged that "Liberty did offer positions to several Global Printer employees while they were still working for Global Printer," *id*., and there was abundant evidence of social communication between Andre and GPS employees, *id*. at 4–11. So I am not persuaded that the propositions underlying Request 40 have been proven, and I am not persuaded that plaintiffs' counsel might not have reasonably believed that they might prevail on that point.

Sanctions under Rule 37(c)(2) do not flow automatically from Liberty's victory on summary judgment. Liberty prevailed across the board, but I am not persuaded that plaintiffs' responses to Liberty's requests for admission warrant sanctions.

4

ORDER

IT IS ORDERED that:

1. The clerk shall tax costs of $14,872.77 in favor of defendant Liberty Parts Team, Inc.

2. Defendant Liberty Parts Team, Inc.'s motions for sanctions, Dkt. 135 and Dkt. 151, are DENIED.

Entered February 1, 2019.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge